IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARISELA BACA,

        Plaintiff,

v.                                                                                              No. 1:16-cv-983-KRS

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

        Defendant.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REVERSE AND REMAND

Plaintiff seeks review of the Commissioner's determination that she is not entitled to disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b), the Court has considered Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum, filed March 27, 2017 [Doc. No. 20], the Commissioner's response in opposition, filed May 30, 2017 [Doc. No. 25], and Plaintiff's reply, filed June 12, 2017 [Doc. No. 28]. Having so considered, the Court FINDS and CONCLUDES that Plaintiff's motion is not well-taken and should be denied.

### I. PROCEDURAL BACKGROUND

On September 13, 2011, Plaintiff filed an application for Social Security Disability Insurance (SSDI) benefits, alleging that she had been disabled since January 1, 2009,[1] due to a back injury, arthritis of the spine, tendonitis, a torn muscle, depression/stress, memory problems, and frequent falling. [Doc. No. 15-1, p. 256]. On May 18, 2012, it was determined that Plaintiff

---

[1] The alleged onset date was later amended to November 1, 2010. [Doc. No. 15-1, p. 42].

was not disabled and her claim was denied. [Doc. No. 15-1, p. 68]. This determination was affirmed on August 9, 2013 [Doc. No. 15-1, p. 82], and a subsequent hearing before an administrative law judge ("ALJ"), held on February 10, 2015, again ended in a denial. [Doc. No. 15-1, pp. 14-32]. The ALJ's decision became final when, on August 5, 2016, the Appeals Council denied Plaintiff's request for review. [Doc. No. 15-1, p. 5-7]. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) (explaining that if the Council denies a request for a review, the ALJ's opinion becomes the final decision). *See also* 20 C.F.R. § 404.900(a)(1)-(5).

## II. STANDARD

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). *See also* 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted). Even so, it is not the function of the Court to review Plaintiff's claims de novo, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III. ANALYSIS

### A. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(3)(A); § 423(d)(1)(A). The Act further adds that for the purposes of § 1382c(3)(A) and § 423(d)(1)(A):

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(3)(B); § 423(d)(2)(A).

When evaluating a disability claim under this standard, the ALJ employs a five-step sequential process. 20 C.F.R. § 416.920. In the first four steps, the claimant must prove that he or she (1) is not engaged in any substantial gainful activity; (2) has a severe physical or mental impairment, or combination of impairments, that meets the twelve month duration requirement; (3) has an impairment, or combination thereof, that meets or equals a listing in 20 C.F.R. pt. 404, subpt. P, App. 1; and (4) is unable to engage in past relevant work. 20 C.F.R. § 416.920(a)(4)(i)-(iv). If the disability claim survives step four, the burden shifts to the ALJ to prove, at step five, that the claimant is able to adjust to other jobs presently available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

Steps four and five are based on an assessment of the claimant's residual functional capacity ("RFC") which gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). *See also* 20 C.F.R. § 416.945(a)(1).

## B. The ALJ's Determination

As detailed in the unfavorable decision underlying the case at bar, ALJ Frederick Upshall Jr. engaged in the sequential analysis set forth above, first finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 1, 2010.[2] [Doc. No. 15-1, p. 22]. At step two, ALJ Upshall found that Plaintiff has the severe impairments of degenerative disc disease of the cervical spine; degenerative joint disease of the right shoulder; obesity; and depressive disorder. *Id.* At step three, the ALJ determined that none of Plaintiff's impairments, whether alone or in combination, met or medically equaled the severity of a listed impairment.

ALJ Upshall next assessed Plaintiff's RFC, finding that Plaintiff has the residual functional capacity to perform a range of light work that is limited to "simple, routine, repetitive, and unskilled tasks (reasoning level of two) that…involve only simple work-related decisions with few, in [sic] any changes in the workplace, and only occasional interaction with the public." [Doc. No. 15-1, p. 25]. ALJ Upshall also found that Plaintiff is able to stand or walk for six hours in an eight hour workday, frequently reach with her right arm "in all directions except overhead reaching," and "occasionally stoop, crouch, kneel, and crawl." *Id.* Based on this assessment, ALJ Upshall determined, at step four, that Plaintiff was unable to perform her past relevant work.

---

[2] ALJ Upshall also determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2016. [Doc. No. 15-1, p. 22].

Proceeding to step five, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [Doc. 15-1, p. 32]. Specifically, he determined that Plaintiff retained the residual functional capacity to perform the requirements of Office Helper (DOT 239.567-010), Photocopying Machine Operator (DOT 207.685-014), and Folder (DOT 369.687-018). [Doc. No. 15-1, p. 31]. Accordingly, ALJ Upshall ultimately concluded that Plaintiff was not disabled. [Doc. No. 15-1, p. 32].

## C. Challenges to the ALJ's Determination

Plaintiff bases her request for reversal and remand on contentions that ALJ Upshall (1) improperly weighed the medical evidence of record; (2) improperly assessed Plaintiff's RFC; and (3) reached an erroneous conclusion at step five of his analysis. Unfortunately, the majority of Plaintiff's memorandum in support of her request consists of unanalyzed assertions. And, what little analysis may be found is undeveloped and largely unsupported. As such, much of what Plaintiff has submitted to the Court is not sufficiently developed or supported to require review. *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of her contentions that have been adequately briefed for our review"); *Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009) (declining to consider undeveloped argumentation and deeming the issue waived); *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation") (quotation omitted); *United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995) ("It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal") (quoting *American Airlines v. Christensen*, 967 F.2d 410, 415 n. 8 (10th Cir.1992)).

Notwithstanding the fact that much of Plaintiff's brief does not contain contentions sufficiently developed to require review, the Court has reviewed Plaintiff's claims to the extent possible and finds that Plaintiff has not provided a basis for reversal.

### 1. Weighing of Evidence

Plaintiff's first argument is rooted in ALJ Upshall's consideration of medical evidence provided by state agency psychological consultants Dr. Eligio R. Padilla and Dr. Scott Walker, and medical consultant Dr. Sylvia M. Ramos. Specifically, Plaintiff complains that the ALJ improperly assigned limited weight to the opinions the consultants offered in regard to Plaintiff's limitations.

Findings of fact made by agency physicians at the initial and reconsideration levels of review "become opinions at the administrative law judge and Appeals Council levels of administrative review." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).[3] Similarly, RFC assessments made by "State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the [ALJ's] decision as medical opinions from non-examining sources about what the individual can still do despite his or her impairment(s)." *Id.* at *4.

It is well established that an ALJ is required to consider and weigh every medical opinion contained in the record. *Keyes-Zachary*, 695 F.3d 1156, 1161 (10th Cir. 2012); 20 C.F.R. § 404.1527(c).[4] In determining what weight to give to an opinion, the ALJ evaluates several factors including, inter alia, the supportability and consistency of the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ need not expressly consider all of the relevant factors, but his or her decision must be "sufficiently specific to make clear to any subsequent reviewers the weight

---

[3] Rescinded effective March 27, 2017.
[4] The rules in this section apply to cases, like the one at bar, filed prior to March 27, 2017.

the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted). Further, the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

Plaintiff does not argue that ALJ Upshall failed to employ the weighing procedure set forth in 20 C.F.R. § 404.1527(c). Rather, Plaintiff attacks the ALJ's stated reasons for the weight he assigned to the doctors' respective opinions. The content of the disputed evidence is detailed—at length—in Plaintiff's Motion to Reverse and Remand [Doc. No. 20, pp. 5-14], the Commissioner's Brief in Response to Plaintiff's Motion [Doc. No. 25, pp. 9-16], and ALJ Upshall's Decision [Doc. No. 15-1, pp. 24-29]. Rather than contribute a fourth rendition of the evidence in toto, the Court will discuss the disputed portions below.

### a. Evidence Provided by Dr. Eligio Padilla

On April 5, 2012, Plaintiff participated in a mental status examination conducted by state agency psychological consultant, Eligio R. Padilla, Ph.D. Dr. Padilla documented that Plaintiff's attention, concentration, memory, orientation, judgment, insight, and decision making were "intact," and that she obtained a "Mini-Mental Status Examination" score of 29.[5] [Doc. No. 15-1, p. 358]. Based on this examination, Dr. Padilla concluded, with caution,[6] that Plaintiff was "moderately limited" in her ability to (1) understand and remember detailed or complex instructions; (2) carry out instructions; (3) attend and concentrate; (4) interact with the public and with supervisors; and (5) adapt to changes in the workplace. Dr. Padilla also suggested that

---

[5] Dr. Padilla explains that this score indicates "consistent normal cognitive functioning." [Doc. No. 15-1, p. 387].
[6] *See* Doc. No. 15-1, p. 359 ("diagnoses and the psychological source statement should be viewed with caution and as provisional because of the time and method-limited constraints of this evaluation").

Plaintiff was "markedly limited" in her ability to work without supervision. [Doc. No. 15-1, pp. 359-360].

The following year, on July 21, 2013, Dr. Padilla examined Plaintiff a second time. During this examination, Plaintiff again obtained a Mini-Mental Status score of 29, and Dr. Padilla rated her decision making, insight, reality testing, and judgment as "intact," and her attention and concentration as "grossly intact." [Doc. No. 15-1, pp. 387-388]. Dr. Padilla then expressed his tempered[7] belief that Plaintiff was "moderately limited" in her ability to (1) understand and remember detailed or complex instructions; (2) attend and concentrate; and (3) interact with the public and with supervisors. This time, Plaintiff was noted as being "markedly limited" in her ability to work without supervision, adapt to changes in the workplace, and carry out instructions. [Doc. No. 15-1, p. 389].

In assigning limited weight to Dr. Padilla's opinion, ALJ Upshall contrasted the doctor's clinical findings that Plaintiff's "attention, concentration, and memory were grossly intact" with his conclusion that Plaintiff is "moderately limited in understanding and remembering detailed instructions." [Doc. No. 15-1, pp. 28-29]. ALJ Upshall explained that "[t]his internal inconsistency render[ed] the opinion less persuasive overall." [Doc. No. 15-1, p. 29]. The ALJ further found that Dr. Padilla failed to translate his "mild," "moderate," and "marked" limitations rankings into explanations regarding Plaintiff's functional capacity which rendered the doctor's opinion vague.

ALJ Upshall provided specific, legitimate reasons for assigning limited weight to Dr. Padilla's opinion evidence, viz., inconsistency and ambiguity, and thus the Court does not find grounds for reversal. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). *See also* 20 C.F.R.

---

[7] *See* Doc. No. 15-1, p. 388 (repeating that "diagnoses and the psychological source statement should be viewed with caution and as provisional because of the time and method-limited constraints of this evaluation").

§ 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion"); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"); SSR 96-6p at *2 ("[T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence…the consistency of the opinion with the record as a whole…and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist").[8]

### b. Evidence Provided by Dr. Scott Walker[9]

In May of 2012, Scott R. Walker, M.D., a non-examining agency expert, completed a Psychiatric Review Technique ("PRT") assessment and a Mental Residual Functional Capacity Assessment ("MRFCA") on behalf of Plaintiff following a review of her record. At the initial and reconsideration levels of review, the former assessment is employed to "rate the severity of mental impairment(s) at steps [two] and [three] of the sequential evaluation process," and the latter is used at steps four and five. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

---

[8] At first glance, it appears that Plaintiff advances several theories of error in the roughly two pages she devotes to Dr. Padilla's opinion evidence. Upon closer inspection, however, all but one of her contentions are best categorized as false starts. For example, Plaintiff first claims that the ALJ did not assess the above referenced limitations at all, and cites to Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996) for the proposition that an ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." [Doc. No. 15-20, p. 8]. Plaintiff, however, does not point to any evidence in the record which supports this argument. Instead, she moves on to her second argument where, in direct contradiction to her first contention, Plaintiff voices her disagreement with the outcome of ALJ Upshall's analysis of the disputed evidence (discussed above). [Doc. No. 20, p. 9]. Finally, Plaintiff asserts, without specification, that ALJ Upshall did not explain why he rejected "Dr. Padilla's findings of other marked and moderate limitations." [Doc. No. 20, p.10]. She then briefly mentions the ALJ's discussion of her Global Assessment of Functioning ("GAF") score without alleging error. *Id.* The Court need not consider these perfunctory assertions. *See Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004).

[9] Dr. Walker is not specifically mentioned in the ALJ's decision; however, it is clear from the exhibit citations and consultation descriptions that the doctor's findings are referenced in the ALJ's discussion of the state agency evidence. [Doc. No. 15-1, pp. 24, 29].

In his PRT assessment of Plaintiff, Dr. Walker noted moderate limitations in the areas of maintaining social functioning, concentration, persistence, or pace, and mild limitations in activities of daily living. The ALJ discussed this evidence at step three of his analysis and concurred with Dr. Walker's findings. [Doc. No. 15-1, p. 24].

In considering Plaintiff's mental RFC, Dr. Walker found that Plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions; attend and concentrate;[10] sustain an ordinary routine without special supervision; interact with the public and with supervisors; accept instructions and respond appropriately to criticism from supervisors; and adapt to changes in the workplace. [Doc. No. 15-1, pp. 77-79]. Dr. Walker rejected Dr. Padilla's suggestion that Plaintiff was "markedly limited" in her ability to work without supervision and, instead, commented that Plaintiff "may" have moderate difficulty in this area. [Doc. No. 15-1, p. 77]. Here, the doctor noted that Plaintiff "currently works independently as a part time care giver and as a janitor." *Id.* Based on these limitations, Dr. Walker concluded that Plaintiff is capable of performing unskilled work. [Doc. No. 15-1, p. 79].

ALJ Upshall reviewed the MRFCA completed by Dr. Walker and afforded limited weight to the severity ratings the doctor assigned to the impairment groupings on the ground that these impairments were never described by Dr. Walker in terms of Plaintiff's functional capacity. The ALJ's explanation is in keeping with the Social Security Administration's policy. As noted in POMS DI 24510.065(B)(1)(c), severity ratings and nonspecific qualifying terms, such as moderate and moderately severe, "do not describe function and do not usefully convey the extent of capacity limitation." *See also* POMS DI 24510.063(B)(2) (stating that "Moderately

---

[10] Dr. Walker noted moderate limitations in Plaintiff's ability to maintain attention and concentration for extended periods of time and to complete a normal workday/workweek without interruptions from psychologically based symptoms. Yet, Dr. Walker also opined that Plaintiff was "not significantly limited" in her ability to perform activities within a schedule and maintain regular attendance. [Doc. No. 15-1, p. 77].

Limited" is used "when the evidence supports the conclusion the individual's capacity to perform the activity is impaired" and explaining that the degree and extent of this limitation must be described further in narrative format).

Notwithstanding the above, the ALJ limited Plaintiff to unskilled work which accounts for the moderate limitations Dr. Walker identified in the areas of concentration, persistence, pace, and the ability to carry out detailed instructions. *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (explaining that "limiting [the plaintiff] to…unskilled work would adequately account for his moderate limitations in concentration, persistence, and pace." *See also* POMS DI 25020.010(B)(3)(b) (stating that unskilled work requires a claimant to carry out "very short and simple instructions"). ALJ Upshall further incorporated Dr. Walker's findings by limiting Plaintiff to tasks which require few, if any, changes in the workplace and only occasional interaction with the public. [Doc. No. 15-1, p. 25].[11]

### c. Evidence Provided by Dr. Sylvia M. Ramos

On April 26, 2012, Plaintiff received a physical examination conducted by agency consultant Sylvia M. Ramos, M.D. Dr. Ramos reported that Plaintiff has a normal range of motion and full motor strength in both of her upper and lower extremities. The doctor opined that Plaintiff is able to "sit, stand, walk, lift, carry, handle small objects, hear, speak and travel except as limited by pain." [Doc. No. 15-1, p. 350]. ALJ Upshall afforded "significant weight" to Dr. Ramos' clinical findings and "limited weight" to the doctor's resulting opinion. As to the

---

[11] In her discussion of Dr. Walker's evidence, Plaintiff, again, attempts to assert several undeveloped, incoherent contentions that are not worthy of review. For example, Plaintiff takes issue with the ALJ's determination that the limitations noted by Dr. Walker were not "functional limitations." [Doc. No. 20, p.11]. To this end, Plaintiff simply states, "[a]s argued above, that analysis is incorrect." *Id.* The "argument" to which Plaintiff refers consists of the following: "A limitation by definition describes a limitation. 'Limited' is the word used by Dr. Padilla….[a]nd moderate and marked are defined in the POMS." [Doc. No. 20, p. 9].

latter, ALJ Upshall explained that Dr. Ramos provided a poorly defined limitation, i.e., "as limited by pain," which made her opinion vague and conclusory. [Doc. No. 15-1, p. 27].

Plaintiff submitted to a second physical examination on June 30, 2013. This examination was performed by agency consultant Jeffrey T. Jobe, M.D., who made clinical findings similar to those reported by Dr. Ramos. Dr. Jobe expressed that Plaintiff did not appear to have any functional disabilities and noted that Plaintiff's "back/neck pain [was] not causing any weakness or numbness." [Doc. No. 15-1, p.401]. ALJ Upshall "placed great weight" on Dr. Jobe's clinical findings as well as on the doctor's opinion regarding Plaintiff's functionality. [Doc. No. 15-1, p. 27].

Due to the varying weights assigned to the opinions of Drs. Ramos and Jobe, Plaintiff complains that ALJ Upshall engaged in a "prohibited 'pick and choose' analysis," rejecting the portions of the record that support her claim of disability.[12] [Doc. No. 20, p. 14]. Plaintiff does not provide support for her argument and the record clearly indicates that ALJ Upshall relied equally upon the clinical findings submitted by both doctors. In regard to the opinion evidence, neither doctor identified any specific functional limitations. The ALJ considered the evidence before him and discounted the generic pain limitation Dr. Ramos included in her report. ALJ Upshall engaged in appropriate evidence weighing, not prohibited cherry-picking. *See, e.g.*, 20 C.F.R. § 404.1527(c)(3).

---

[12] Plaintiff also contends that the ALJ's "rejection of Dr. Ramos's [sic] finding that [Plaintiff] would be limited by pain is 'troubling' in light of 'material changes' in the medical record." [Doc. No. 20, pp. 13-14]. Specifically, Plaintiff points to an MRI taken on May 19, 2012, and states that ALJ Upshall was required to analyze the doctor's opinion in light of this "later-developed evidence." [Doc. No. 20, p. 13]. Tellingly, Plaintiff never actually argues that ALJ Upshall shirked his analytical responsibility, and the record demonstrates that the MRI evidence was taken into consideration. *See* Doc. No. 15-1, p. 26. Again, Plaintiff has expressed her disagreement with the ALJ's weighing of the evidence without asserting any legal deficiencies.

## 2. RFC Determination

Plaintiff also argues that ALJ Upshall's RFC finding is incomplete and incorrect as the ALJ failed to properly assess her physical limitations and her depression. In support, Plaintiff first details the physical evidence of record that is favorable to her claim. She then concludes, without explanation, that the ALJ failed to support his "light work" finding with substantial evidence. Contrary to Plaintiff's contention, the record is replete with findings which support the ALJ's determination that Plaintiff is physically capable of performing "light work." *See, e.g.*, *supra* pp. 11-12. And, should evidentiary conflicts arise, resolution lies within the purview of the ALJ. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

Plaintiff next argues that the ALJ failed to properly consider her diagnosis of fibromyalgia and cites to page 414 of the administrative record ("AR 414") as proof of her impairment. AR 414 is one page of a record from South Broadway Medical which simply lists fibromyalgia as one of Plaintiff's health issues. [Doc. No. 15-1, P. 418]. As the Commissioner correctly explains in her response [Doc. No. 25, p. 19], SSR 12-2p states that a physician's diagnosis of fibromyalgia, alone, is not enough to establish that one has the impairment of fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Rather, the diagnosing physician must provide evidence that he or she conducted a physical examination of the individual. It is evidence relating to the examination that will be reviewed by the Commissioner. *Id.* Plaintiff cites to nothing in the record that would provide the ALJ with a basis for reviewing a fibromyalgia claim.

Turning to considerations of mental health, Plaintiff also claims that the limitations Dr. Padilla noted in terms of her depression and anxiety should have been incorporated into her RFC.

[Doc. No. 20, p. 20]. For the reasons discussed *supra* pp. 8-9, as well as Plaintiff's failure to provide any legal authority in support of her assertion, the Court need not address this argument.

### 3. Step Five Determination[13]

Finally, Plaintiff attacks the ALJ's determination that she is capable of performing the "light jobs" of office helper, photocopy machine operator, and folder. Here, Plaintiff argues that the office helper position requires a reasoning level of two, which is beyond her ken, and that she is unable to engage in the frequent reaching which all of the positions require.

As to reasoning level, Plaintiff claims that level two reasoning "*may* be inconsistent with a person limited to simple, routine, and repetitive tasks." [Doc. No. 20, p. 22] (emphasis added). Yet, the Tenth Circuit has actually suggested otherwise. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding an "apparent conflict" between jobs requiring level three reasoning and a claimant who is limited to simple, repetitive tasks, and noting that the plaintiff's RFC was more consistent with level two reasoning). More importantly, in assessing Plaintiff's RFC, the ALJ explicitly found that Plaintiff is limited to a reasoning level of two [Doc. No. 15-1, p. 25]. Accordingly, Plaintiff is unable to establish an inconsistency between her RFC and the reasoning level required to be employed as an office helper.

Plaintiff's reaching limitation argument, in turn, is based solely on Plaintiff's earlier claim that the ALJ erred in his assessment of her physical limitations. [Doc. No. 20 p. 22]. As Plaintiff's earlier argument was rejected, *supra* pp. 12-13, this connected claim, too, must fail.

### IV. CONCLUSION

For the reasons set forth above, the Court is unable to assign error to the Commissioner's rejection of Plaintiff's claim for disability.

---

[13] The heading Plaintiff provides for her third overarching argument is: "The ALJ Failed to Clarify Inconsistent VE Testimony." Plaintiff, though, never develops the argument as stated. [Doc. No. 20, p. 20].

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing [Doc. No. 20] is hereby **DENIED**.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**